## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PWNHEALTH, LLC D/B/A EVERLY

HEALTH SOLUTIONS,

    Petitioner,

v.

WALGREEN CO.,

    Respondent.

Civil Action No. 24-357-UNA

**PUBLIC VERSION**

AAA Case No. 01-22-00022-4919

---

## PETITIONER PWNHEALTH, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD

William M. Lafferty (#2755)
Kevin M. Coen (#4775)
Courtney Kurz (#6841)
MORRIS NICHOLS ARSHT &
TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
wlafferty@morrisnichols.com
kcoen@morrisnichols.com
ckurz@morrisnichols.com
Telephone: (302) 658-9200

Shawn Rabin (*pro hac vice* forthcoming)
Stephanie Spies (*pro hac vice* forthcoming)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
srabin@susmangodfrey.com
sspies@susmangodfrey.com
Telephone: (213) 336-8330

Krysta Pachman (*pro hac vice* forthcoming)
SUSMAN GODFREY L.L.P
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
kpachman@susmangodfrey.com
Telephone: (310) 789-3100

Katherine Peaslee (*pro hac vice* forthcoming)
SUSMAN GODFREY L.L.P
401 Union Steet, Suite 3000
Seattle, WA 98101
kpeaslee@susmangodfrey.com
Telephone: (206) 516-3880

Dated: March 19, 2024

*Attorneys for Petitioner PWNHealth, LLC d/b/a Everly Health Solutions*

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT...................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ................................................2

III.   SUMMARY OF THE ARGUMENT .......................................................................3

IV.    CONCISE STATEMENT OF THE FACTS ...........................................................3

      A.     The Agreement between PWN and Walgreens .........................................3

      B.     PWN's Claims in Arbitration Against Walgreens ...................................4

      C.     The First Partial Final Award ..................................................................5

      D.     Walgreens' Request to Disqualify the Arbitrator ..................................11

      E.     The Second Partial Final Award and Final Award .................................12

V.     ARGUMENT ........................................................................................................12

      A.     The Award Satisfies the Legal Standard for Confirmation ....................13

            1.     The Award is presumptively valid and none of the FAA's bases
                   for vacating an award apply.....................................................13

            2.     Even if manifest disregard for the law could vacate an award,
                   the Arbitrator did not manifestly disregard the law ...................17

      B.     The Arbitrator Had Authority to Issue the Award .................................18

      C.     The Court Should Award Post-Award, Pre-Judgment Interest and Post-
           Judgment Interest ...................................................................................18

VI.    CONCLUSION......................................................................................................20

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*,
   660 F.3d 281 (7th Cir. 2011) ...................................................17

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of
   Account*,
   618 F.3d 277 (3d Cir. 2010).............................................12, 16

*Bapu Corp. v. Choice Hotels Int'l, Inc.*,
   371 F. App'x 306 (3d Cir. 2010) ..........................................13

*Bellantuono v. ICAP Secs. USA, LLC*,
   557 F. App'x 168 (3d Cir. 2014) ..........................................17

*Brentwood Med. Assocs. v. United Mine Workers*,
   396 F.3d 237 (3d Cir. 2005)............................................3, 13

*Christian v. Joseph*,
   15 F.3d 296 (3d Cir. 1994)...................................................19

*Dluhos v. Strasberg*,
   321 F.3d 365 (3d Cir. 2003)...................................................13

*Exxon Shipping Co. v. Exxon Seamen's Union*,
   73 F.3d 1287 (3d Cir. 1996)...................................................16

*Freeman v. Pittsburgh Glass Works, LLC*,
   709 F.3d 240 (3d Cir. 2013)...................................................14

*Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*,
   2010 WL 338219 (Del. Ch. Jan. 29, 2010)...............................19

*Hall Street Assocs. LLC v. Mattel, Inc.*,
   552 U.S. 576 (2008)........................................................13, 17

*Paul Green Sch. of Rock Music Franchising, LLC. v. Smith*,
   389 F. App'x 172 (3d Cir. 2010) ..........................................17

*Rhino Services, LLC v. DeAngelo Contracting Services, LLC*,
   2023 WL 5186254 (E.D. Pa. Aug. 11, 2023) ...........................19

*Royal Bank Am. v. Kirkpatrick*,
   2011 WL 4528349 (E.D. Pa. Sept. 30, 2011) ......................17, 18

*Sabre GLBL, Inc. v. Shan*,
  779 F. App'x 843 (3d Cir. 2019) .................................................................3

*Sun Ship, Inc. v. Matson Navigation Co.*,
  785 F.2d 59 (3d Cir. 1986)........................................................................18

*Sutter v. Oxford Health Plans LLC*,
  675 F.3d 215 (3d Cir. 2012), *aff'd*, 569 U.S. 564 (2013) ...........................12, 13, 16

*Teamsters Local 177 v. United Parcel Serv.*,
  966 F.3d 245 (3d Cir. 2020).................................................................2, 12

*Whitehead v. Pullman Grp., LLC*,
  811 F.3d 116 (3d Cir. 2016)......................................................................17

**Statutes**

6 Del. C. § 2301 ........................................................................................3, 19

9 U.S.C. § 9........................................................................................1, 12, 20

9 U.S.C. § 10 ....................................................................................... *passim*

9 U.S.C. § 11 ..............................................................................................1

9 U.S.C. § 13 ...................................................................................1, 12, 20

15 U.S.C. § 1125(a)(1)(A)-(B) .......................................................................4

28 U.S.C. § 1961........................................................................................3, 19

Pursuant to 9 U.S.C. §§ 9 and 13, Petitioner PWNHealth, LLC d/b/a Everly Health Solutions ("PWN") seeks an order (i) confirming the Final Award issued by David M. Brodsky of AAA on March 18, 2024, in the arbitration between Claimant PWN and Respondent Walgreen Co. ("Walgreens"), (ii) directing judgment to be entered upon the Final Award, and (iii) awarding post-award, pre-judgment interest and post-judgment interest at the applicable legal rates.[1]

## I.    PRELIMINARY STATEMENT

In the early days of the COVID-19 pandemic, PWN and Walgreens signed a Master Services Agreement (MSA) to jointly develop and operate a web-based COVID-19 testing program. This was an unprecedented, nationwide testing effort to combat a once-in-a-generation global pandemic, and it required an immense amount of work by both parties, both collaboratively and independently, to create and run. Without PWN, Walgreens would have been unable to do nationwide COVID-19 testing.

As part of this collaboration, Walgreens agreed that it would administer COVID-19 tests to consumers and that PWN would provide the clinical oversight services for the testing and deliver test results. Walgreens was contractually required to display PWN content on its website, to inform consumers that their test requests and results would be processed by PWN, and to send such test requests and results to PWN. Despite entering into this tightly integrated workflow utilizing PWN's testing oversight services, Walgreens began diverting tests from the agreed workflow by processing them in-house instead of sending them to PWN. And it did so while continuing to

---

[1] The Final Award is attached to PWN's Petition to Confirm the Arbitration Award ("Petition") as Exhibit A. The arbitrator's February 9 Partial Final Award and March 7 Partial Final Award, upon which the Final Award relies, are attached to that Petition as Exhibits D and E, respectively. The parties' agreement to arbitrate, contained in the MSA (defined below), is attached to that Petition as Exhibit B. The AAA's appointment of the Arbitrator is attached to the Petition as Exhibit F. There were no written extensions of time in which to issue an award, and Walgreens has not moved to modify or vacate the Award pursuant to 9 U.S.C. §§ 10-11.

display PWN's mark on its website and continuing to tell consumers that their tests would be sent to PWN and its network of physicians.

In light of Walgreens' failure to adhere to its obligations under the MSA and its misuse of PWN's mark, PWN filed an arbitration demand pursuant to the MSA's arbitration provision on June 10, 2022, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Lanham Act, violation of the Delaware Deceptive Trade Practices Act, and common law fraudulent inducement.

After months of discovery, a seven-day hearing, pre- and post-hearing briefing, and closing arguments, the Arbitrator issued a first Partial Final Award and, after additional briefing, a second Partial Final Award, followed by the Final Award. Pursuant to the reasoning in the Partial Final Awards, the Final Award finds Walgreens liable for breach of contract, violation of the duty of good faith and fair dealing, violation of the Lanham Act, and violation of the Delaware Deceptive Trade Practices Act, and assesses damages owed to PWN, including interest as of March 7, 2024, in the total amount of $987,653,712.

The Third Circuit recognizes that, absent certain narrow circumstances not present here, a "court 'must grant'" a timely request to confirm an arbitration award. *Teamsters Local 177 v. United Parcel Serv.*, 966 F.3d 245, 248 (3d Cir. 2020) (quoting 9 U.S.C. § 9). PWN now makes such a request. None of the bases set forth in the FAA for vacating an arbitrator's award apply here, and the Court should accordingly enter an order confirming the Award.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

PWN brings this action to confirm a post-arbitration Final Award (together with the Partial Final Awards, the "Award") issued by an American Arbitration Association Tribunal on March 18,

2024, after a seven-day Arbitration occurring from October 11-20, 2023, with closing arguments heard on November 29, 2023, after the conclusion of post-hearing briefing.

## III.    SUMMARY OF THE ARGUMENT

This Court should confirm the Award for the following reasons.

1.      The Award is presumptively valid under Third Circuit law, *see, e.g. Brentwood Med. Assocs. v. United Mine Workers*, 396 F.3d 237, 241 (3d Cir. 2005), and the Award does not meet any of the exceedingly narrow circumstances for vacatur enumerated in the FAA, *see* 9 U.S.C. § 10.

2.      Even if "manifest disregard of the law" were an additional basis to vacate an arbitration award within the Third Circuit—a question the Third Circuit has not decided, *see Sabre GLBL, Inc. v. Shan*, 779 F. App'x 843, 849 (3d Cir. 2019)—the Arbitrator did not manifestly disregard the law by issuing the Award.

3.      The Arbitrator had authority to issue the Award pursuant to the contract between the parties.

4.      The Court should award post-award, pre-judgment interest at the rate provided by Delaware law, 6 Del. C. § 2301, and post-judgment interest pursuant to 28 U.S.C. § 1961.

## IV.    CONCISE STATEMENT OF THE FACTS

### A.    The Agreement between PWN and Walgreens

On April 10, 2020, PWN and Walgreens entered into a Master Services Agreement ("MSA") that would, among other things, allow consumers to access PWN's clinical oversight services for COVID-19 tests provided by Walgreens via a website designed jointly by the parties. Petition Ex. D at 3; *see* Petition Ex. B (MSA). The contract provided that consumers using Walgreens' website would be able to register and request a COVID-19 test, and any individual

3

determined to meet threshold eligibility requirements for a test would then have their test submitted to PWN. Petition Ex. D at 11. The contract further required that Walgreens would display certain PWN content, including its terms and conditions, on the website. *Id*. at 8.

Both parties initially performed under the MSA. However, in the summer of 2021, Walgreens—without telling PWN—began diverting certain COVID tests from PWN's physicians to its own internal pharmacists. Petition Ex. D at 4. Through the fall and winter of 2021 and into 2022, Walgreens continued improperly insourcing tests (*i.e.*, sending tests to its pharmacists instead of sending them to PWN's physicians as contractually required), until ultimately it was diverting all tests covered by the MSA from PWN to Walgreens' own pharmacists. *Id*. Despite the fact that it was diverting tests away from PWN, Walgreens continued to display PWN's mark on its website and in materials provided to consumers. *Id*. at 20-1, 23.

The MSA contains an arbitration provision stating, in relevant part:

> The Parties agree to arbitrate any dispute arising out of or relating to this Agreement or any claim arising under any federal, state or local statutes, laws, or regulations arising out of or relating to this Agreement. The arbitration will be conducted in the State of Delaware by a single arbitrator selected by the Parties. If the Parties are unable to agree upon a single arbitrator, the Delaware office of the AAA shall appoint an arbitrator with experience in contract disputes. The arbitration will be (i) conducted according to the commercial arbitration rules of the AAA in effect at the time of the arbitration hearing and (ii) governed by the Federal Arbitration Act. The arbitrator's decision will be final and binding on the Parties, and the decision may be enforced by either Party in any court of competent jurisdiction.

Petition Ex. B, ¶ 23.

**B.     PWN's Claims in Arbitration Against Walgreens**

On June 10, 2022, PWN initiated arbitration against Walgreens, asserting (1) Walgreens' breach of the MSA by "insourcing" tests rather than sending them to PWN for processing, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A)-(B), (4) violation of the Delaware Deceptive Trade Practices Act

("DTPA"), 6 Del. Code. § 2531 *et seq.*, and (5) common law fraudulent inducement. Petition ¶ 14 & Ex. D at 5. PWN subsequently filed an amended demand asserting the same five causes of action, and adding the claim that Walgreens further breached the MSA by misappropriating PWN's application programming interface ("API"). Petition Ex. D at 5.

The Final Hearing began on October 11, 2023. *See* Petition Ex. D at 5. During the Final Hearing, the Arbitrator heard testimony from a total of eighteen fact witnesses and five experts. *Id*. at 5-6. The parties collectively introduced over 320 exhibits. *Id*. The Arbitrator reserved ruling on objections to some of these, but ultimately admitted each exhibit—"notwithstanding the fact that, under strict application of the Federal Rules of Evidence or other codes of evidence, not all exhibits would pass muster." *Id*. at 6–7.

After seven days of hearings, the Arbitrator heard closing arguments on November 29, 2023. *Id*. at 6. The parties made two separate post-hearing submissions, resubmitted the pre-hearing briefs and exhibits, and the record was closed on January 5, 2024. *Id*.

## C.    The First Partial Final Award

The Arbitrator issued a detailed Partial Final Award ("First Partial Award") on February 9, 2024.[2] *See* Petition Ex. D. The First Partial Award sets out, in 38 pages of single-spaced text, a thorough recitation of the claims and defenses before the Arbitrator and the Arbitrator's findings and conclusions based on the law and the record. The Arbitrator ruled on each claim as follows.

Breach of the MSA. With respect to PWN's claim that Walgreens breached the MSA by diverting COVID tests away from PWN, the Arbitrator focused on the language of the MSA to determine that the relevant contract provisions "placed Walgreens under an obligation to utilize the walgreens.com website to convey the patient and their confidential information to PWN, not

---

[2] Though dated February 8, 2024, the parties received the First Partial Final Award from the AAA via email the following day.

5

to any other purveyor of physician or physician-like services, which would include its own pharmacists." Petition Ex. D at 11. Consequently, the Arbitrator found for PWN on its breach of contract claim. *Id*. at 15. In so doing, he also cited to documents and testimony from numerous Walgreens employees and executives, ultimately stating, "I find that Walgreens, at the highest levels of the company, took steps to keep the diversion of tests through its in-sourcing efforts from being known to PWN." *Id*. at 12.

In his analysis, the Arbitrator addressed the arguments advanced by Walgreens and, considering the evidence in the record, found none succeeded. *See id*. at 11–15. For instance, with respect to Walgreens' claim that PWN knew since at least September 2021 that Walgreens was insourcing COVID tests, the Arbitrator found "that Walgreens has been pushing a narrative that was essentially false — that it gave notice to PWN of its decision to insource the web-based testing process and to cut PWN off from such tests. All of the credible evidence points in the opposite direction." *Id*. at 12.

With respect to PWN's claim that Walgreens' removal of PWN content from Walgreens' website without PWN's approval also constituted a breach of the MSA, Walgreens neither contested the facts nor asserted a defense. *Id*. at 15. Accordingly, the Arbitrator found this conduct also constituted a breach of contract and ruled for PWN. *Id*.

Finally, the Arbitrator found that Walgreens breached the MSA in a third way, by copying portions of PWN's API. *Id*. at 19. He noted that "it appears undisputed" that "Walgreens utilized PWN's API in setting up the code to allow Walgreens to send orders to Aegis"—indeed, the "key evidence" consisted of testimony from Walgreens' "own witness." *Id*. at 16. The Arbitrator considered each of Walgreens' defenses—that the MSA in fact permitted Walgreens' use, that

Supreme Court precedent purportedly forecloses PWN's argument, and that federal copyright law preempts PWN's claim—and found each unavailing. *Id*. at 17–19.

Breach of the Implied Covenant of Good Faith and Fair Dealing. While the Arbitrator found that most of Walgreens' conduct was covered by the MSA (and therefore would not give rise to a breach of the implied covenant), one consequence of that conduct was not covered: the diminution of PWN's volume of tests through the website, and, therefore, compensation, to zero. *Id*. at 20. The Arbitrator found that the contract contained an implied minimum of some reasonable volume of tests that PWN would receive from Walgreens, and consequently that Walgreens' conduct breached the covenant of good faith and fair dealing. *Id*. at 20.

Violation of the Lanham Act and Deceptive Trade Practices Act. The Arbitrator ruled that PWN proved both false association and false advertising under the Lanham Act. *Id*. at 22–24. As threshold points, the Arbitrator found that the record supported the finding that the PWNHealth mark was valid at the relevant time, and Walgreens did not dispute its use of PWN's mark. *Id*. at 20–22. (Despite this lack of dispute, the Arbitrator nevertheless supports his finding with multiple cites to the record, consistent with his meticulous approach throughout the Award). *Id*. Turning to false association, the Arbitrator concluded based on the evidence that PWN satisfied the "likelihood of confusion" test for false association. *Id*. at 22–23. The Arbitrator cited to the numerous documents, supported by witness testimony, that consumers were, in fact, confused by Walgreens' use of PWN's mark. *Id*. at 22–23.

With regard to false advertising, the Arbitrator considered Walgreens' contention that PWN failed to offer evidence on key issues, but disagreed based on the evidence introduced at the hearing. *Id*. at 23. In particular, the Arbitrator found that PWN introduced into evidence "numerous examples of actual confusion in the minds of consumers as to who was administering their tests

and who would deliver their test results," and further cited to documents and testimony showing that "[c]onsumers around the country mistakenly blamed delays in receiving their results on PWN and publicly criticized PWN on social media because of the confusion." *Id*. at 23 (alteration in original). The Arbitrator found, again based on the evidence, that PWN satisfied the test for false advertising. *Id*.

Because proof of liability under the Lanham Act necessarily meets the requirements for a claim under the DTPA, the Arbitrator found for PWN on its DTPA claim. *Id.* at 24.

Common Law Fraudulent Inducement. The Arbitrator denied PWN's claim for common law fraudulent inducement. *Id.*

*** 

The Arbitrator examined each of Walgreens' asserted defenses—specifically, its alleged immunity under the PREP Act, PWN's supposed waiver of and estoppel from pursuing its breach of contract claim, and the MSA's limitation of liability clause—and, after careful analysis, found that each failed. *Id*. at 24–27.

Finally, the Arbitrator determined the appropriate damages in light of its liability findings, the factual evidence, and each party's respective expert testimony.

The Arbitrator found damages for Walgreens' breach of contract in the amount of $83,444,524. *Id*. at 28. As the Arbitrator explained, this is the figure reached by PWN's damages expert and represents "the difference between the revenues that PWN lost as a result of the breach and the avoided costs that were due to the breach of contract" in light of the 11,848,271 tests that Walgreens diverted away from PWN, as well as certain additional tests for which Walgreens owed PWN a fee. *Id*. at 27. The Arbitrator further considered the analysis of PWN's expert regarding PWN's avoided costs, for which the expert used a "'conservatively high' costs estimate and a

8

'conservatively low' damages calculation," and which resulted in subtracting $6,398,066 in avoided costs to reach PWN's final damages for Walgreens' breach. *Id*. at 28. The Arbitrator considered the testimony of Walgreens' rebuttal damages expert, but found that the "vast majority of the downward adjustments" she made to the calculations of PWN's expert rested on assumptions that contradicted the Arbitrator's findings based on the record. *Id*. He also considered testimony from Walgreens' expert regarding damages for Walgreens' misappropriation of PWN's API, but found her calculations "entirely conjectural" and accordingly did not adjust the breach of contract damages to account for them. *Id*. at 28–29.

With regard to damages under the Lanham Act, the Arbitrator found that disgorgement was an appropriate remedy, and based on the evidence and expert testimony at trial, awarded PWN the disgorgement amount that was proven at trial attributable to Walgreens' Lanham Act violation, $802,659,438. *Id*. at 29-36. As the Arbitrator noted, PWN's expert used a joint "stipulation of revenues that Walgreens generated on the insourced tests." *Id*. at 29. Walgreens' damages expert testified that "she did 'not have critiques of the amount of the revenues that [PWN's expert] presented in his report.'" *Id*. at 29. With respect to Walgreens' profits, PWN's expert based his calculation of $802,659,438 on the stipulated number of insourced tests from July 2021 through May 2022. *Id*. at 33. Walgreens' expert challenged the date range—a challenge the Arbitrator again rejected based on the evidence—and otherwise testified that she "[did] not have critiques of the amount of revenues that [PWN's expert] presented in his report." *Id*. After analyzing both sides' cited cases and the language of the Lanham Act, the Tribunal found, as a matter of law, that "the burden of showing costs and deduction, including attribution," is on the Respondent, Walgreens. *Id*. at 29-32.

The Arbitrator found Respondent did not sustain "its burden to prove offsetting costs and other deductions or that the profits were not derived from the infringement." *Id*. at 36.  In doing so, the Arbitrator considered the evidence Walgreens and its damages expert relied upon in an attempt to satisfy that burden: (1) a late-produced made-for-litigation spreadsheet containing Walgreens' purported financials and (2) a survey expert proffered by Walgreens, both of which PWN vigorously objected to. *Id*. at 33–36. The Arbitrator overruled PWN's objections to both, though with respect to the spreadsheet stated that it was produced after the close of fact discovery, well after depositions had occurred, after PWN's damages expert had submitted his affirmative report, and under circumstances that "smack of gamesmanship." *Id*. at 35. Furthermore, the spreadsheet cannot be checked for accuracy because it is missing important source information; it lacks cost of goods sold or operating expense line-item information; it fails to explain the accounting allocations or methodologies used by Walgreens; and it contradicted other purportedly contemporaneous, not made-for-litigation evidence. *Id*. at 35–36. As the Arbitrator stated, "The record is replete with issues that cannot be appropriately examined because of the failure to produce appropriate financial records and because of the unexplained discrepancies between the exhibit's summary of direct expenses and other evidence in the record." *Id*. at 36. Therefore, the Arbitrator had "little difficulty in deciding that the exhibit does not satisfy Walgreens' burden to prove deductible costs." *Id*.  As to the survey expert, the Arbitrator found "serious problems with her methodology," because the surveys "did not adequately take into account how many touchpoints a consumer would have with PWN upon . . . starting the process of becoming a patient of a PWN physician." *Id.* at 34. Therefore, the Arbitrator "decline[d] to follow" the survey expert report and "decline[d] to follow" Walgreens' damages expert's "additional reductions of the revenue figures" based on that survey expert. *Id*. Accordingly, the Arbitrator found that Walgreens

10

had failed to carry its burden of establishing offsetting costs and other deductions and concluded that for the purpose of calculating disgorgement, "the amount of Walgreens' tainted 'profits' is $802,659,438." *Id*. at 36.

The Arbitrator acknowledged that "[d]etermining the amount to award in a disgorgement case is not simply a matter of adding up profits from an income statement." *Id*. at 36. Rather, disgorgement under the Lanham Act is an equitable remedy, and the statute allows a court to, in its discretion, enter judgment for a "just" sum under the circumstances. *Id*. The Arbitrator found that awarding PWN the full amount of Walgreens' profits was just: "This was . . . a calculated scheme by Walgreens to recapture for its bottom line the costs it had contracted to pay to PWN to achieve a place in the world of Covid testing; Walgreens should not benefit from its unprincipled use of PWN's marks, while diverting patients from PWN through its alteration of the website." *Id*.

The Arbitrator directed the parties to submit additional briefing on whether prejudgment interest should be simple or compound, along with calculations of the appropriate interest amount. *Id*. at 37.

## D.    Walgreens' Request to Disqualify the Arbitrator

Just two days after receiving the Arbitrator's First Partial Final Award, Walgreens filed a request to disqualify Arbitrator Brodsky, who the parties mutually appointed in a double-blind process, on the basis of a purported conflict of interest. Before the issuance of the First Partial Final Award, Walgreens had never previously asserted any conflict of interest. The AAA's independent Administrative Review Council carefully considered Walgreens' request and rightfully rejected it. Ex. 1.

E.       **The Second Partial Final Award and Final Award**

After the parties submitted their briefing on the issue of prejudgment interest, the Arbitrator issued a second Partial Final Award awarding PWN monthly compounded interest on its breach of contract damages and simple interest on its Lanham Act damages. Petition Ex. E. The Arbitrator directed the parties to meet and confer on the appropriate amount of additional interest through the date of the Final Award. *Id*.

After hearing from the parties regarding final interest calculations, the Arbitrator issued a Final Award on March 18, 2024.[3] In total, the Arbitrator awarded PWN damages, including interest, of $987,653,712.   The Arbitrator also ordered Walgreens to reimburse PWN for administrative fees and expenses of the American Arbitration Association in the amount of $185,995.54.

## V.   ARGUMENT

Confirmation of an arbitration award "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Teamsters Local*, 966 F.3d at 248 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). Indeed, "[t]he FAA not only authorizes, but mandates, that district courts confirm arbitration awards by converting them into enforceable judgments through a summary proceeding." *Id.*; *see* 9 U.S.C. §§ 9, 13.

A court's role in reviewing the outcome of arbitration proceedings is not "to 'correct factual or legal errors made by an arbitrator'" and courts should not re-weigh the evidence to decide whether to confirm the award. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 296 (3d Cir. 2010) (quoting *Major League Umpires Ass'n v. American League of Prof. Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004)); *Sutter v. Oxford*

---

[3] The Award is dated March 18, 2024, but was transmitted on March 19, 2024.

*Health Plans LLC*, 675 F.3d 215, 219–220 (3d Cir. 2012) (stating that "[w]e do not entertain claims that an arbitrator has made factual or legal errors" and "even serious errors of law or fact will not subject his award to vacatur"), *aff'd*, 569 U.S. 564 (2013). Rather, it must confirm an award issued by an authorized tribunal unless the award satisfies the narrow bases for vacatur established by the FAA. *Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 586–87 (2008). The Award here, issued by an authorized arbitrator, does not meet any of the narrow bases for vacatur. The Court should confirm the Award.

**A.      The Award Satisfies the Legal Standard for Confirmation**

**1.      The Award is presumptively valid and none of the FAA's bases for vacating an award apply**

Congress has established a "strong federal policy in favor of commercial arbitration," and a reviewing court must "begin with the presumption that the award is enforceable." *Sutter*, 675 F.3d at 219; *see Brentwood Med. Assocs.*, 396 F.3d at 241 ("[A]n award is presumed valid unless it is affirmatively shown to be otherwise."); *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 371 F. App'x 306, 308 (3d Cir. 2010) (there is a "strong presumption in favor of enforcing arbitration awards"). Accordingly, a federal district court's review of an arbitration award "could be generously described only as extremely deferential." *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir. 2003). Indeed, the Supreme Court has made clear that a court may vacate an arbitration award only for the reasons defined in Section 10 of the Federal Arbitration Act. *Hall Street Assocs. LLC*, 552 U.S. at 586–87. Those grounds are:

(1)      where the award was procured by corruption, fraud, or undue means;

(2)      where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. None of these applies here.

*First*, Walgreens cannot possibly claim PWN used any "corruption, fraud, or undue means" to procure the Award. 9 U.S.C. § 10(1). The hearing was held at the offices of Walgreens' own counsel, before an arbitrator agreed upon by the parties using a double-blind selection process, pursuant to a contract that Walgreens has never challenged as invalid.

*Second*, Walgreens likewise has no basis to claim "partiality or corruption of the arbitrator[]," 9 U.S.C. § 10(2). To vacate an award based on an arbitrator's evident partiality, the challenging party must show "a reasonable person would have to conclude" that the arbitrator was partial to the other party to the arbitration. *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 253 (3d Cir. 2013) ("The conclusion of bias must be ineluctable, the favorable treatment unilateral."). The Third Circuit has emphasized that partiality must be "evident," which is a higher standard than the mere "appearance" of bias. *Id*. Arbitrator Brodsky—a highly respected arbitrator with decades of experience—displayed no bias at all, and certainly no "evident" partiality sufficient to meet the Third Circuit's standard.

The AAA already examined the question of whether Arbitrator Brodsky acted with bias or partiality and found that he did not. Immediately after the Arbitrator issued his award in PWN's favor, Walgreens filed a request with the AAA to disqualify Arbitrator Brodsky on the basis of

14

purported bias and an undisclosed conflict. The AAA's independent Administrative Review Council rightfully rejected Walgreens' desperate attempt to evade an adverse award. *See* Ex. 1. As the AAA explained, its rules provide for disqualification of an arbitrator on the basis of "partiality or lack of independence, inability or refusal to perform his or her duties with diligence and in good faith, and any grounds for disqualification provided by applicable law." *Id*. The AAA's Administrative Review Council reviewed Walgreens' objection and found that it did not support disqualification. *Id*.

Putting aside the fact that the AAA has already determined this point, the record contains no evidence of partiality by the Arbitrator. In the case of PWN's claim for fraudulent inducement, the Arbitrator found the record did not support liability, and accordingly ruled in Walgreens' favor. Petition Ex. D at 24. Similarly, while PWN argued that certain of Walgreens' expert opinions should be stricken as untimely, the Arbitrator declined to do so stating that "each side deserves to—and will—have its evidence heard and fully considered." *Id.* at 33; *see id*. at 38 ("I have carefully considered the testimony of all witnesses, as well as related exhibits, and all arguments made before, during and after the Final Hearings."). The Arbitrator likewise admitted a late-disclosed exhibit relied upon by Walgreens' expert, over PWN's objection, and despite his "severe misgivings about the tactics and circumstances surrounding the creation, production, and use" of the exhibit—practices which "smack[ed] of gamesmanship." *Id*. at 35. And, despite finding that Walgreens violated the DTPA, the Arbitrator declined to award PWN treble damages permitted by the statute. *Id*. at 37 ("I reject that measure of damages as being inappropriate.").

*Third*, Walgreens cannot argue that the Arbitrator engaged in any "misbehavior" that would prejudice Walgreens' rights—whether by refusing to delay the hearing, refusing to hear pertinent evidence, or otherwise. 9 U.S.C. § 10(3). On the contrary, the Arbitrator postponed the hearing by

15

several months upon Walgreens' request. *See* Ex. 2 at p.7 (May 10, 2023 Email from Walgreens' counsel stating, "I want to reiterate that Walgreens is exceedingly concerned about the fast-approaching hearing dates and its ability to adequately prepare for the same" in connection with Walgreens' request to move the hearing from July to October); Ex. 3 (Final Scheduling Order). And as discussed above, the Arbitrator admitted evidence over PWN's objections and emphasized that each side would have all of its evidence heard.

**Fourth**, the Arbitrator neither exceeded his powers nor "so imperfectly executed them" that he failed to render "a mutual, final, and definite award." 9 U.S.C. § 10(4). An arbitrator only exceeds his powers under § 10(a)(4) "when he decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter*, 675 F.3d at 219–20. For an award to be considered irrational, "there must be absolutely no support at all in the record justifying the arbitrator's determinations." *Ario*, 618 F.3d at 295 (alteration and citation omitted). Rather, a court "will uphold an award even if the arbitrator engaged in improvident, even silly, factfinding." *Id.* at 296 (citation omitted). The arbitrator's decision "need be neither wise nor internally consistent" to be confirmed. *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1297 (3d Cir. 1996).

Here, the Arbitrator decided only the claims before him—specifically, PWN's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Lanham Act, violation of the DTPA, and fraudulent inducement, and the damages owed as a consequence of his liability findings. Furthermore, his Award cites support for each of his findings. *See generally* Petition Ex. D. The Award provides a mutual, final, and definite resolution to the claims presented.

No basis for vacating exists under the FAA. This Court should confirm the Award.

**2.      Even if manifest disregard for the law could vacate an award, the Arbitrator did not manifestly disregard the law**

In *Hall Street Associates L.L.C. v. Mattel, Inc.*, the Supreme Court held that "the grounds for vacatur . . . provided by [§] 10 . . . of the FAA are exclusive." 552 U.S. at 581. As the Seventh Circuit has held, *Hall Street* makes clear that "neither judges nor contracting parties can expand [the FAA's factors]"—and "[d]isregard of the law is not on the statutory list." *Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 284 (7th Cir. 2011). The Third Circuit has not yet weighed in on whether manifest disregard of the law survives as an independent basis for vacating an arbitrator's decision—a position at odds with the plain holding of *Hall Street*. However, this does not matter: even if manifest disregard of the law were a viable basis for vacatur, the Arbitrator's Award comes nowhere near that high standard.

An arbitrator displays manifest disregard when he or she issues a decision that "fl[ies] in the face of clearly established legal precedent, such as where an arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 121 (3d Cir. 2016) (citation omitted). Merely relying on "'an erroneous interpretation of the law'" does not support vacatur. *Bellantuono v. ICAP Secs. USA, LLC*, 557 F. App'x 168, 174 (3d Cir. 2014) (quoting *Dluhos*, 321 F.3d at 369). Instead, the law requires a "willful flouting of known, governing law." *Paul Green Sch. of Rock Music Franchising, LLC. v. Smith*, 389 F. App'x 172, 178 (3d Cir. 2010). "The alleged disregard 'must appear clearly in the record of the arbitration, and there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it.'" *Royal Bank Am. v. Kirkpatrick*, 2011 WL 4528349 at *4 (E.D. Pa. Sept. 30, 2011) (quoting *Biscanin v. Merrill Lynch*

17

*& Co., Inc*., 407 F.3d 905, 907 (8th Cir. 2005)). The Arbitrator's award has no legal errors at all, let alone any "manifest disregard" of established legal principles.

Nowhere does the Award indicate a clearly governing legal principle that the Arbitrator then intentionally ignored. While the manifest disregard for the law standard contradicts the FAA's plain text and the Supreme Court's interpretation of the same, this Court need not decide that issue, as it does not apply here.

**B.     The Arbitrator Had Authority to Issue the Award**

PWN and Walgreens are parties to the MSA, which contains an arbitration provision that neither party has challenged. *See* Petition Ex. B at ¶ 23. That provision provides for arbitration of "any dispute arising out of or relating to this Agreement or any claim arising under any federal, state or local statutes, laws, or regulations arising out of or relating to this Agreement," to be conducted "by a single arbitrator selected by the Parties" in accordance with "the commercial arbitration rules of the AAA in effect at the time of the arbitration hearing" and governed by the FAA. *Id*. The parties agreed that David M. Brodsky of the AAA would serve as arbitrator, and the arbitration proceeded under the rules of the AAA. The Arbitrator had authority under the MSA to issue the Award**.**

**C.     The Court Should Award Post-Award, Pre-Judgment Interest and Post-Judgment Interest**

The Arbitrator's Award provides for "pre-judgment" interest, but only addresses interest accruing up until the date of the Award. Petition Ex. A. Now that the Award is final, it is accordingly left to this Court to award post-award, pre-judgment interest on the amount in the final Award. *Sun Ship, Inc. v. Matson Navigation Co*., 785 F.2d 59, 63 (3d Cir. 1986) (permitting district court to award post-arbitration award, pre-judgment interest even when arbitrator has not done so).

Because this action to confirm arbitration falls under the Court's diversity jurisdiction, state law governs the rate of such pre-judgment interest during the interim period between the entry of final arbitration award and the entry of a judgment. *Rhino Services, LLC v. DeAngelo Contracting Services, LLC*, 2023 WL 5186254, at *6 (E.D. Pa. Aug. 11, 2023). Delaware courts use the legal rate set forth in 6 Del. C. § 2301 as the default rate for prejudgment interest. *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *30 (Del. Ch. Jan. 29, 2010) (awarding pre-judgment interest at the legal rate, compounded quarterly). Section 2301 provides that the "legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due." 6 Del. C. § 2301(a).

In contrast to pre-judgment interest, post-judgment interest is governed by federal law and accrues automatically. *See Rhino Services, LLC*, 2023 WL 5186254, at *7 ("Even in diversity cases, post-judgment interest is governed by 28 U.S.C. § 1961 rather than by state law.") (citing *Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988)); *Christian v. Joseph*, 15 F.3d 296, 298 (3d Cir. 1994) (28 U.S.C. § 1961(a) "has been uniformly interpreted" as providing for "automatic accrual of post-judgment interest"). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). "[A]warding post-judgment interest is not a reward, but rather just compensation to ensure that a money judgment will be worth the same when it is actually received as it was when it was awarded." *Christian*, 15 F.3d at 298 (citation omitted). The Court should require Walgreens to pay post-judgment interest pursuant to 28 U.S.C. §1961.

## VI.    CONCLUSION

For these reasons, the Court should enter an order (i) confirming the Final Award pursuant to 9 U.S.C. § 9, (ii) directing judgment to be entered upon the Final Award pursuant to 9 U.S.C. § 13, and (iii) awarding post-award, pre-judgment interest and post-judgment interest at the applicable legal rates.

Dated: March 19, 2024

Respectfully submitted,

MORRIS NICHOLS ARSHT & TUNNELL LLP

*/s/ Kevin M. Coen*
William M. Lafferty (#2755)
Kevin M. Coen (#4775)
Courtney Kurz (#6841)
1201 North Market Street
Wilmington, DE 19801
wlafferty@morrisnichols.com
kcoen@morrisnichols.com
ckurz@morrisnichols.com
Telephone: (302) 658-9200

SUSMAN GODFREY L.L.P.

Shawn Rabin (*pro hac vice* forthcoming)
Stephanie Spies (*pro hac vice* forthcoming)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
srabin@susmangodfrey.com
sspies@susmangodfrey.com
Telephone: (212) 336-8330

Krysta Pachman (*pro hac vice* forthcoming)
SUSMAN GODFREY L.L.P
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
kpachman@susmangodfrey.com
Telephone: (310) 789-3100

Katherine Peaslee (*pro hac vice* forthcoming)

SUSMAN GODFREY L.L.P
401 Union Steet, Suite 3000
Seattle, WA 98101
kpeaslee@susmangodfrey.com
Telephone: (206) 516-3880

*Attorneys for Petitioner PWN Health, LLC d/b/a*
*Everly Health Solutions*